Fish, J.
If this recovery can be sustained, a most unmitigated piece, of injustice will prevail.
The estate of John Carpenter, deceased, will pay a debt of his father, Hudson Carpenter, to the amount of over $3,000, without having received anything from his father’s estate.
Under the cover of a devise in the will of Hudson Carpenter which in terms gave his son John a farm worth about $3,000, and which farm was taken and sold by an order of the surrogate’s court, to pay the debts of Hudson Carpenter, in which proceeding this plaintiff joined and participated in the fruits, the estate of John Carpenter is sought to be charged with the residue of the indebtedness of said Hudson Carpenter, on the plea that before the proceeding taken in the surrogate’s court, John had accepted the devise and made himself personally liable for all of said indebtedness, no matter how great; and even though the entire estate of Hudson Carpenter, including the farm so devised to John, was insufficient to pay said indebted ness, and moreover the fact that the whole estate, including the farm was so taken and appropriated.
Such a result ought not to obtain unless the sharp ground upon which it is based cannot be avoided and is established beyond dispute, and unless, along with the facts and actions of the parties, the construction of the will of Hudson Carpenter, admits of no other conclusion.
Any construction of the terms of the will which does no violence to the language used, and which does not clearly conflict with the intention of the testator as so expressed, which will avert such a conclusion ought to be resorted to by the courts.
*286 Upon a careful reading of the whole will, including codicil, and giving effect to its several parts and keeping before us the probable intent of the testator, and his belief as to the state of his property at the time of making his will, it .cannot justly be found that it was his intent to charge the Beecher farm with the payment of his debts, or to charge his son John personally with the payment, as a condition of the devise of the Beecher farm ; on the contrary the fair and more reasonable conclusion to be drawn from the language is that he intended to give John the Beecher farm free and clear of any conditions, at the time supposing his other property was more than sufficient to pay all his just debts and legacies. Any other conclusion must be upon the idea that the father, instead of conferring a benefit upon his son John, was, in fact, inventing a scheme to saddle his debts upon John, so as to make him liable to pay at least double the value of the property devised to him, when he knew that his debts exceeded the value of his estate.
It may be assumed that the testator knew what property he owned, and believed he had correct views as to its value. It is very clear that he supposed the value of his property was considerably in excess of his debts, including the legacies provided.
Then it will be seen,
First. By the first section of his will, made the 26th of November, 1872, he directs his debts and funeral expenses to be paid out of his personal property, showing clearly that he believed his personal estate sufficient to pay all his debts.
Second. He gave to his wife by the will of 1872, a legacy of $3,800, which he declares to be in consideration of any moneys or property of hers, which had come to his hands, and all claims she may have against him cencerning her separate estate, and also in lieu of dower in the land or share in personal estate, and directs said $3,800 to be paid her “in the course of administration by my said executors in cash, out of any or all of my estate,” after adding $1,000 to the bulk of his estate from a sale of the Beecher Farm, which by that will he gave to his son Frank.
In the will made at that time, he gave his son Frank the Beecher Farm, upon condition of his paying a thousand dollars, to be added to the bulk of his estate; and although he does not direct the $3,800 to be paid to his wife out of any and all of his estate, by reading the language of the devise of the Beecher Farm to Frank, along with the paragraph giving $3,800 legacy to his wife, it is clear that he did not intend that the Beecher Farm, so given to Frank, should be resorted to, to pay that legacy; except as to the $1,000 to be added to the bulk of his estate. By that will his son John is made one of the executors, and the $3,800,, *287 is to be paid by executors out of the estate. Then, to make it more clear that he supposed his estate to he in value much larger than the sum of his debts, including the $3,800 to his wife, the will goes on to provide the sum of three thousand in legacies to other parties, to be paid out of his. estate what was left after satisfying all the foregoing bequests, and all expenses of administration; but at the same ' time refers to the contingency that there may not be suffi- • cient left to pay all, and in that event the said last named $3,000 in legacies to be paid pro rata.
It will be remembered that these legacies are only to be paid out of what is left after he had given the Beecher farm to Frank, and provided for paying his wife the $3,800 out of the bulk of his estate, and then, as if to make it more sure. that he did not intend the Beecher farm to be resorted to for any purpose connected with the devises, he follows all the foregoing provisions with the declaration that he expects to die seized of the Beecher farm, and other items of real estate named, and then, to enable the executors to carry out the provisions of the will, he gives all his real estate (except the Beecher farm), to his executors in trust, to sell, and with the avails make a fund out of which the legacies and bequests were to be paid. The whole tenor of the will, therefore, is to the effect that the testator intended by it, to save the Beecher farm from being resorted to for the payment of either debts or legacies, except to the extent of the $1,000 which Frank was to pay for it to go to the bulk of his estate. This was the condition of things on the 20th of July, 1874, when he made a codicil to his will.
The codicil revoked the devise of the Beecher farm to F'rank, and revoked the legacy of $300 to his grand-daughter, Harriet Jeffrey, and made no other change in the will then existing.
As he revoked the devise of the Beecher farm to Frank, he gives it to his son, John, the defendant’s intestate. All the other provisions of the will stand without alteration or qualification.
By the codicil, “ I give * * * to my son, John Carpenter * * * forever the said Beecher farm * * *
free and clear of any conditions whatever,” etc.
And then adds, “It being expressly understood that my son, John Carpenter, is to pay, out of my estate, all the just debts and legacies, as it shall be under my foregoing last will, and this my codicil thereto.”
This last devise to John of the Beecher farm, read with the language which followed it, did not make the debts and legacies a lien upon that farm, or make the payment of them a condition of the devise to John; on the contrary it was the intent clearly expressed, that the debts and legacies were to be paid out of the estate, other than the Beecher farm.
*288 ' It may be asked, how could John pay all the just debts and legacies, out of the estate, in any other way than as specially prescribed in the will of 1872, which made a trust of all the residue of the estate, except the Beecher farm, to-pay said debts and legacies?”
In changing the devise of the farm from Frank to John, the testator did not interfere with any of the other provisions of the will; but so as not to be misunderstood, the explanatory clause of the codicil, by which he gave the Beecher farm to John, was added, and read in its common import, is only this:
“It is expressly understood that this devise of the Beecher farm to John, is not to change the directions I have given in my will heretofore written; but that my son John as executor and trustee of my estate (other than the Beecher farm) is to pay said debts and legacies out of said estate.”
That is, I give John this Beecher farm, free and clear of any conditions; but John is, however, to carry out the other provisions of my will and pay the debts and legacies out of the residue of my estate, as provided in my foregoing last will.”
Such was the intention of the testator; and when that intention can be ascertained, the construction must be given which carries out that intention; and, it is said that, in giving construction to a will and finding the intent of the testator, the court wifi put itself in the place of the testator, with his knowledge of his estate, and from that standpoint consider the motives, objects and desires, which were likely to have been upon his mind and for the purpose of giving-effect to the intent will sometimes add or reject a word; and it may be added that on this subject each case is ‘ ‘ sui generis.” Roseboom v. Roseboom, 81 N. Y., 356; Campbell v. Beaumont, 91 id., 464; Taggart v. Murray, 53 id., 233.
It must then be held that there was no personal liability assumed by John Carpenter, in accepting the devise of the farm, if it is conceded that he did so accept, as is found by the decision of the case.
The testator could not by any provision of his will prevent the debts from reaching his estate, both real and personal; no matter what disposition he made of his estate or of any part of his real estate, his creditors could, nevertheless, through proceedings in surrogate’s court, reach it all and have it sold to pay their claims. This conclusion is not at all in conflict with the rule, that a party who accepts a devise of real estate, charged with debts or legacies, as conditions of the devise, thereby becomes liable for the payment of the said debts and legacies.
*289 It appears that after the death of John Carpenter, proceedings were taken before the surrogate of Washington county, in which proceeding this plaintiff joined, for a sale of all the real estate of Hudson Carpenter, deceased, for the payment of his debts.
The plaintiff proved as a debt against the estate, the balance of what was due her of the $3,800 legacy. .She had been already paid a part of it, and proved the residue as a debt. Under a decree of the surrogate, in a proceeding in which she was a party, the Beecher farm was taken and sold, and the avails of it, along with that of other parts of the estate, were distributed among the creditors pro rata,— plaintiff claiming and receiving her distributive share, and there is no other estate to pay the residue of said indebtedness.
The plaintiff thinks John or his estate, ought to pay it, because upon the death of his father, on the faith that the estate of his father was abundantly sufficient to pay all his debts, without resorting to the Beecher farm, and the provisions of the will making provision for the payment of the debts out of other property,—he took possession of the farm under the devise, held possession of it for a short time and until it was sold out from under him by the creditors of whom plaintiff was one, to pay the father’s debts.
It looks too much like a one sided bargain. The consideration upon which he took possession, failed. He was evicted by proceedings which he could not resist, and proceedings which plaintiff took part in, and which grew out of the insolvency of the estate of his father; so that what he did undertake to accept, was taken back practically, by .the same power that gave,—so that he got nothing.
Can it be possible, that under such circumstances, any liability resul ts?
The proceeding before the surrogate must be held an adjudication of the rightful sale of the farm, leaving John Carpenter and his estate, in the same condition as to liability, as if he had never made any attempt to take possession of or accept the same. All the cases reported, holding the devisee liable for the payment of the debts and legacies upon accepting the devise cum onere,—are where the proof showed that the devisee had taken and appropriated the subject of the devise, had the full benefit of it, and had not been interfered with in the enjoyment of if.
There is no case holding, that when the devisee had taken pro forma possession of the thing devised, but was in turn evicted ana the property taken away to meet the lawful demands of the estate, by lawful proceedings in settlement of *290 the estate,—that nevertheless the devisee, although foiled in his attempt to get the benefit of the devise, was held liable to pay the debts and legacies.
The proof of acceptance, under the will by John Carpenter, of the Beecher farm, is far from satisfactory; and if the case depended upon the weight of evidence, on that point alone, a recovery ought not to be had.
The_ only proof which would admit of an inference in that direction is to the effect that he was in possession of the farm for several years after his father’s death, no proof accompanying as to how and by what title he claimed to occupy.
As he was a son and an executor he may have remained in possession as heir-at-law, awaiting a settlement of the estate, to see if it was necessary to resort to it to pay the ■debts.
The only instance where he is made to speak on the subject is noted at folio 50 of the case, where it was proved that John' said that he worked the farm as executor.
The notice of sale at public auction, signed by John; is a .notice of sale of two farms, to be sold on the premises, ■owned by Hudson Carpenter, deceased. The Ely farm was •one of the farms owned by his father, but not devised to John. He advertised them both together and alike, to be sold on the Hudson Carpenter premises. Can such a notice be held as evidence that John had accepted the Beecher farm under the will t' Is it not rather more like an attempt to sell under the devise in trust ?
In any event, where we are called upon to find a fact upon which a sharp and unjust recovery is sought, the evidence of the fact ought to be quite clear. No hard ■or sharp inferences should be drawn in aid of a claim, which had no standing except through the application of a sharp rule.
The judgment should be reversed and a new trial granted, costs to abide final event.
It is made a point, by appellant, that the recovery is excessive in any event; that an error in computation has resulted in making the sum of the recovery several hundred dollars too much.
This seems to be the case, and if there was no ground for reversal of the judgment it should be corrected.
*291 The legacy drew interest from the death of Hud- ' son Carpenter, which was date of August 20,
1875........................................ $3,800 00
Add interest on the legacy to August 14, 1883, the day when a payment was made from the real estate sales............................. 1,818 00
$5,618 00
Deduct payment.......................... 2,367 00
$3,251 00
Deduct payment made by executor prior to sale
real estate.................................. 880 00
Balance due August 14,1883................... $2,371 00
Add interest to June 9, 1887, date of decision... 543 00
Balance June 9, 1887.......................... $2,914 00
Becovery................................. $3,658 40
Proper sum due;......................... 2,914 00
Excess .................................. $744 40